In re ADOPTION OF K.J., Minor Child

Appeal of C.S., Natural Mother

In re Adoption of J.J., Minor Child

Appeal of C.S., Natural Mother.

In re Adoption of B.J., Minor Child

Appeal of C.S., Natural Mother.

Superior Court of Pennsylvania.

Submitted Aug. 6, 2007.
Filed Nov. 16, 2007.

Karl E. Rominger, Carlisle, for appellant.

Jacqueline M. Verney, Carlisle, Guardian Ad Litem, for appellee.

John J. Mangan, III, Carlisle, for father, appellee.

Ruby D. Weeks, Carlisle, for Cumberland County, appellee.

BEFORE: FORD ELLIOTT, P.J., GANTMAN, and COLVILLE *, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, C.S. ("Mother"), appeals the final decrees, entered in the Cumberland County Orphan's Court, which terminated her parental rights to her minor children, K.J. (DOB September 2, 1999), J.J. (DOB July 2, 2002), and B.J. (DOB April 12, 2005). Mother asks us to determine whether the court erred when it terminated her parental rights, in light of her "significant" bond with all three children, her willingness to cooperate with the family service goals, and her claim that she is in the process of appealing her murder conviction and believes she will be able to give her children a safe and loving home if she is victorious in that matter and subsequently released from prison. We hold the court had clear and convincing proof

that termination of Mother's parental rights would serve the best interests of the children. Accordingly, we affirm the decrees granting the petitions for involuntary termination of Mother's parental rights as to each child.

¶ 2 The relevant facts and procedural history of this case are as follows. K.J. and J.J. were removed from Mother's custody and placed in emergency foster care on October 27, 2003, due to the suspicious death of their three-year-old brother. Prior to their removal, the children had resided with Mother, maternal grandmother, and an unrelated teenager. When the children were removed, the house was in deplorable condition. Moldy food, garbage and pill bottles were scattered on the floor throughout the home. The toilet was not working. The children were also not receiving adequate medical care. K.J.'s immunizations were not up to date and his two front teeth were rotted and broken. J.J. had no immunizations. Father resided next door.

¶ 3 Mother last visited with her children in September 2004. She was incarcerated in October 2004, on charges of first and third degree murder, aggravated assault, and endangering the welfare of children in connection with her three-year-old child's death. While she was awaiting trial, Mother gave birth to B.J. on April 12, 2005. The newborn was immediately placed in foster care. On June 27, 2006, Mother was convicted of third degree murder, aggravated assault, and endangering the welfare of a child. On September 5, 2006, Mother was sentenced to an aggregate term of eighteen (18) to forty (40) years' imprisonment.

¶ 4 On October 3, 2006, CYS filed a petition to terminate Mother's parental rights under Section 2511(a)(2), (5), and (8)

---

* Retired Senior Judge Assigned to Superior Court.

of the Adoption Act[1]. The court held termination hearings on December 13, 2006 and January 26, 2007. Mother testified at the hearing on December 13, 2006. The court terminated Father's parental rights on January 26, 2007, but reserved its resolution on Mother's parental rights, pending a decision on Mother's motion for new trial regarding her third degree murder conviction. The court ultimately terminated Mother's parental rights by three separate final decrees entered on February 26, 2007. Mother filed a timely notice of appeal from each final decree on March 6, 2007. The court ordered a Rule 1925(b) concise statement of matters complained of on appeal on March 7, 2007. Mother timely filed her Rule 1925(b) statement on March 21, 2007.

¶ 5 On appeal, Mother raises two issues for review:

DID THE TRIAL COURT ERR IN DETERMINING THAT CUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES PRESENTED EVIDENCE SO CLEAR, DIRECT, WEIGHTY, AND CONVINCING AS TO ENABLE THE FACT FINDER TO COME TO A CLEAR CONVICTION WITHOUT HESITANCY, OF THE TRUTH OF THE PRECISE FACTS IN ISSUE?

DID THE TRIAL COURT ERR IN DETERMINING THE BEST INTEREST OF THE CHILDREN WOULD BE SERVED BY TERMINATING [MOTHER'S] PARENTAL RIGHTS?

(Mother's Brief at 4).

¶ 6 The standard and scope of review applicable in termination of parental rights cases are as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super.2004) *(en banc), appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super.2002) (internal citations omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super.2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super.2000) (en banc). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support

---

1. 23 Pa.C.S.A. § 2511.

an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191 (Pa.Super.2004).

¶ 7 Mother argues she has a significant bond with all three of her children and it is in their best interests to reinstate her parental rights. She claims she is now willing to cooperate with CYS. Mother claims she is in the process of appealing her murder conviction, and believes she will be able to give her children a safe and loving home if she is victorious in this matter and subsequently released from prison. She contends the court should have deferred its decision until after her appeal of the murder conviction.

¶ 8 Mother further asserts that by terminating her parental rights, the court has made her children orphans because there is no prospective adoptive family. Additionally, Mother argues her children will not be entitled to receive "an inheritance" in the future from her, even though she is not an immediate resource for this purpose. Mother concludes the court erred when it determined that termination of Mother's parental rights would serve the best interests of K.J., J.J. and B.J. We disagree.

¶ 9 CYS sought the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

(a) **General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapaci-

ty, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

25 Pa.C.S.A. 2511(a)(1), (2), (5) and (8). We only need to agree with the court's decision on any one subsection of 23 Pa. C.S.A. § 2511(a) to affirm the termination decree. *In re B.L.W., supra* at 384.

 ¶ 10 The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In*

*re A.L.D.,* 797 A.2d 326, 337 (Pa.Super.2002). Nevertheless, parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* at 340. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.*

¶ 11 The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger,* 459 Pa. 636, 331 A.2d 172 (1975). There the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley,* 719 A.2d 327, 330 (Pa.Super.1998).

¶ 12 Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. 23 Pa.C.S.A. § 2511(a)(5). "[T]o terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.,* 825 A.2d 1266, 1275–76 (Pa.Super.2003); 23 Pa.

C.S.A. § 2511(a)(8). "Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.,* 837 A.2d 560, 564 (Pa.Super.2003). Once the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of CYS supplied over a realistic time period. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of CYS' services. *In re Adoption of T.B.B.,* 835 A.2d 387, 396 (Pa.Super.2003); *In Re Adoption of M.E.P., supra* at 1276.

¶ 13 In the case of an incarcerated parent, the fact of incarceration alone does not provide sufficient grounds for the termination of parental rights. *In re C.S., supra.* Likewise, a parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize given resources and to take affirmative steps to support a parent-child relationship. *In re D.J.S.,* 737 A.2d 283 (Pa.Super.1999). As such, a parent's responsibilities are not tolled during incarceration. *In re B., N.M.,* 856 A.2d 847, 855 (Pa.Super.2004), *appeal denied,* 582 Pa. 718, 872 A.2d 1200 (2005). "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* "[A] parent's basic constitutional right to the custody and rearing of his … child is converted, upon the failure to fulfill … parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *Id.* at 856.

¶ 14 Once the statutory requirement for involuntary termination of parental rights has been established under subsection (a), the court must consider whether the child's needs and welfare will be met by termination pursuant to subsection (b). *In re D.W.*, 856 A.2d 1231, 1234 (Pa.Super.2004). In that process the court must take into account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S., supra* at 1202. Above all else the court must give adequate consideration to the needs and welfare of the child. *In re J.D.W.M., supra,* at 690.

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the **intangible** dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*In re C.S., supra* at 1202.

¶ 15 In the instant case, the court found a legal basis for terminating Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2), (5) and (8). The record evidence supports termination of Mother's parental rights under subsection (a)(2). Primarily due to the injuries and death of Mother's three-year-old child, K.J. and J.J. were placed in the care and custody of CYS. When the children were taken into custody, the conditions of Mother's home were appalling and unsanitary. Moldy food, garbage and pill bottles were scattered on the floor throughout the home. The toilet was not working and CYS had concerns as to how the children bathed. The children were also not receiving adequate medical care. K.J.'s immunizations were not up to date and his two front teeth were rotted and broken. J.J. had no immunizations.

¶ 16 Mother last visited with her children in September 2004. She was incarcerated from October 2004, on charges of first and third degree murder, aggravated assault, and endangering the welfare of children in connection with her three-year-old child's death. Mother gave birth to B.J. on April 12, 2005, in prison, and the newborn was immediately placed in foster care. On June 27, 2006, Mother was convicted of third degree murder, aggravated assault, and endangering the welfare of a child. On September 5, 2006, Mother was sentenced to an aggregate term of eighteen (18) to forty (40) years' imprisonment. Notwithstanding her efforts to maintain contact with K.J. and J.J., because of her lengthy term of incarceration Mother cannot remedy the conditions that caused her incapacity to parent the children.

¶ 17 Likewise, the record supports termination under subsections (a)(5) and (a)(8). On the day of the termination hearing, the children had been in placement well over twelve months. Mother is incarcerated and cannot remedy the conditions that caused the placement. She will also not be able to remedy the conditions within a reasonable time because her release from prison will not occur for another eighteen years at the earliest, during which time she will be incapable of parenting the children. Mother's own actions caused her to be in prison, her release date is uncertain, and could be as late as 2046.

Mother's future with respect to adequate housing and care for her children is indefinite. Additionally, while Mother contends she is appealing her conviction, the result of that appeal is speculative. Under subsections (a)(5) and (a)(8), termination of Mother's parental rights best serves the needs and welfare of the children.

¶ 18 With respect to Section 2511(b), the court stated:

[The court is] satisfied that termination of parental rights would best serve the needs and welfare of the children. The boys' therapist testified that it would be in their best interest to be adopted. Furthermore, she opined that the memories they had of their parents were such that termination of parental rights would have no adverse affect upon them. [The court] concluded that the youngest child, B.J. had no real bond with either parent. She had very limited contact with her [M]other, having been placed from birth as a result of [Mother's] incarceration. She had never met [F]ather.

Although [the court has] some concern over the fact that an adoptive home had not yet been identified, [it was] convinced that termination of parental rights would enhance the prospects of locating adoptive families for these children.

\* \* \*

[The Agency caseworker] testified that in her personal experience as an adoption caseworker, she had been one hundred [percent] successful in obtaining adoptive placements for children whose parental rights had been terminated before an adoptive family has been identified. Based upon that testimony, [the court was] convinced that the needs and welfare of the children would best be served by granting the petition to terminate parental rights.

(Orphans' Court Opinion at 5–6). In terminating Mother's parental rights, the court gave primary consideration to the developmental, physical and emotional needs and welfare of the children. *See* 23 Pa.C.S.A. § 2511(b). The children should not be kept waiting in foster care in the vain hope that Mother will serve less than her minimum sentence in prison. Further, there is record evidence that the time K.J. and J.J. spent living with Mother was detrimental to their emotional and psychological well-being. According to the children's therapist, K.J. has memories of his deceased three-year-old brother being taped up, deprived of food and physically abused. K.J. destroyed letters he received from Mother and blames Mother as the reason he is in foster care. The therapist opined termination of parental rights and adoption is in the children's best interests. Further, because Mother has not ever spent time with B.J., and has not seen K.J. and J.J. since 2004, she has no significant bond with the children. Therefore, termination of her parental rights would not destroy an existing beneficial relationship.

¶ 19 Based upon the foregoing, we hold the court had clear and convincing proof that termination of Mother's parental rights would serve the best interests of the children. Accordingly, we affirm the decrees granting the petitions for involuntary termination of Mother's parental rights as to each child.

¶ 20 Decrees affirmed.