J-S01044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.A.M., SR., NATURAL | : | |
| FATHER | : | No. 1463 WDA 2014 |

Appeal from the Order August 11, 2014
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s): 20014 of 2014 O.C. Adoption

BEFORE:  GANTMAN, P.J., JENKINS, J. and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JANUARY 29, 2015**

Appellant, J.A.M., Sr. ("Father"), appeals from the order entered in the Lawrence County Court of Common Pleas, which involuntarily terminated his parental rights to his minor child, J.M. ("Child").  We affirm.

In its opinion, the trial court fully set forth the relevant facts of this case.  Therefore, we have no reason to restate them.  Procedurally, on March 14, 2014, Lawrence County Children and Youth Services ("CYS") filed a petition for involuntary termination of Father's parental rights to Child.[1] The court held a hearing on the petition on July 31, 2014.  On August 14, 2014, the court entered an order involuntarily terminating Father's parental rights to Child.  Father filed a timely notice of appeal on September 9, 2014,

---

[1] The petition also sought to terminate the parental rights of B.M.L. ("Mother"), who is not a party to this appeal.  Following a hearing, the court terminated Mother's parental rights by a separate order filed on April 16, 2014.

along with a concise statement of errors complained of on appeal pursuant
to Pa.R.A.P. 1925(a)(2)(i).

Father raises the following issues for our review:

WHETHER [CYS] PROVIDED BY CLEAR AND CONVINCING
EVIDENCE THAT [FATHER] BY CONDUCT CONTINUING FOR
A PERIOD OF AT LEAST SIX MONTHS IMMEDIATELY
PRECEDING THE FILING OF THE PETITION EITHER HAS
EVIDENCED A SETTLED PURPOSE OF RELINQUISHING
PARENTAL CLAIM TO [CHILD] OR HAS REFUSED OR
FAILED TO PERFORM HIS PARENTAL DUTIES.

WHETHER [CYS] PROVIDED BY CLEAR AND CONVINCING
EVIDENCE THAT THE CONDITIONS AND CAUSES OF THE
INCAPACITY, ABUSE, NEGLECT OR REFUSAL CANNOT OR
WILL NOT BE REMEDIED BY [FATHER].

WHETHER [CYS] PROVIDED BY CLEAR AND CONVINCING
EVIDENCE THAT IT IS IN THE BEST INTEREST OF [CHILD]
THAT [FATHER'S] PARENTAL RIGHTS BE TERMINATED.

(Father's Brief at 5).

The standard and scope of review applicable in termination of parental
rights cases are as follows:

When reviewing an appeal from a decree terminating
parental rights, we are limited to determining whether the
decision of the trial court is supported by competent
evidence. Absent an abuse of discretion, an error of law,
or insufficient evidentiary support for the trial court's
decision, the decree must stand. Where a trial court has
granted a petition to involuntarily terminate parental
rights, this Court must accord the hearing judge's decision
the same deference that it would give to a jury verdict.
We must employ a broad, comprehensive review of the
record in order to determine whether the trial court's
decision is supported by competent evidence.

Furthermore, we note that the trial court, as the finder of
fact, is the sole determiner of the credibility of witnesses

- 2 -

and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

CYS sought the involuntary termination of Father's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary

- 3 -

consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. *In re C.P.*, 901 A.2d 516 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." *Id.* at 520. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121.

When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*Id.* (internal citations omitted).

"The statute permitting the termination of parental rights outlines

- 4 -

certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have his…rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

Where a parent is incarcerated, the fact of incarceration

does not, in itself, provide grounds for the termination of parental rights. However, a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his…child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his…children.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations and quotation marks omitted). "[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the order and well-reasoned opinion of the Honorable Eugene E. Fike, II, we conclude Father's issues merit no relief. The trial court's order and Rule 1925(a) opinion comprehensively discuss and properly dispose of the questions presented. (*See* Trial Court Opinion, filed September 23, 2014, at 2-7; Trial Court Order, filed August 14, 2014, at 2-3) (finding: Father was incarcerated for various periods of time beginning in 2008, including at time of hearing on July 31, 2014; after Father's release from prison in July 2013, CYS prepared permanency plan and family service plan with primary goal of reunification; Father incurred new criminal charges in December 2013; Father did not exert significant effort to achieve objectives of plans, which included treatment of his drug and alcohol

addictions and achievement of financial and personal stability; Father failed drug tests on multiple occasions; although Father made contact for drug and alcohol assessment, he failed to follow up with intake or treatment recommended by Drug and Alcohol Commission; Father did not participate in required psychological evaluations; Father has not demonstrated financial and personal stability; in December 2013 meeting with CYS caseworker, Father reported his housing circumstances were uncertain because of his failure to pay rent; Father's testimony was unclear as to planned living arrangements after his expected release from prison in August 2014; Father has cancelled multiple scheduled visits with Child; classes and programs Father completed while in prison were not relevant to family service plan requirements and Father's specific needs for rehabilitation; CYS caseworker testified that Child has progressed in residential treatment facility; Child has far fewer outbursts and exhibits much less disruptive behavior; Child appears happy and well-adjusted, talking and interacting positively with foster family; caseworker testified that Child did not display significant positive bond with Father; Father failed to take responsibility for his previous failings and addictions, and failed to take advantage of opportunity to demonstrate improvement in parenting skills and ability to care for Child responsibly and safely; CYS proved by clear and convincing evidence that continued incapacity, neglect, and refusal of Father has caused Child to be without essential parental care, control, and subsistence necessary for

Child's physical or mental well-being; evidence is clear and convincing that Father cannot or will not remedy conditions that led to termination of his parental rights, and termination will best serve Child's needs and welfare). Accordingly, we affirm on the basis of the trial court opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/2015