J-S01044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.A.M., SR., NATURAL | : | |
| FATHER | : | No. 1463 WDA 2014 |

Appeal from the Order August 11, 2014
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s): 20014 of 2014 O.C. Adoption

BEFORE: GANTMAN, P.J., JENKINS, J. and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED JANUARY 29, 2015**

Appellant, J.A.M., Sr. ("Father"), appeals from the order entered in the Lawrence County Court of Common Pleas, which involuntarily terminated his parental rights to his minor child, J.M. ("Child"). We affirm.

In its opinion, the trial court fully set forth the relevant facts of this case. Therefore, we have no reason to restate them. Procedurally, on March 14, 2014, Lawrence County Children and Youth Services ("CYS") filed a petition for involuntary termination of Father's parental rights to Child.[1] The court held a hearing on the petition on July 31, 2014. On August 14, 2014, the court entered an order involuntarily terminating Father's parental rights to Child. Father filed a timely notice of appeal on September 9, 2014,

---

[1] The petition also sought to terminate the parental rights of B.M.L. ("Mother"), who is not a party to this appeal. Following a hearing, the court terminated Mother's parental rights by a separate order filed on April 16, 2014.

along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Father raises the following issues for our review:

WHETHER [CYS] PROVIDED BY CLEAR AND CONVINCING EVIDENCE THAT [FATHER] BY CONDUCT CONTINUING FOR A PERIOD OF AT LEAST SIX MONTHS IMMEDIATELY PRECEDING THE FILING OF THE PETITION EITHER HAS EVIDENCED A SETTLED PURPOSE OF RELINQUISHING PARENTAL CLAIM TO [CHILD] OR HAS REFUSED OR FAILED TO PERFORM HIS PARENTAL DUTIES.

WHETHER [CYS] PROVIDED BY CLEAR AND CONVINCING EVIDENCE THAT THE CONDITIONS AND CAUSES OF THE INCAPACITY, ABUSE, NEGLECT OR REFUSAL CANNOT OR WILL NOT BE REMEDIED BY [FATHER].

WHETHER [CYS] PROVIDED BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF [CHILD] THAT [FATHER'S] PARENTAL RIGHTS BE TERMINATED.

(Father's Brief at 5).

The standard and scope of review applicable in termination of parental rights cases are as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses

- 2 -

and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

CYS sought the involuntary termination of Father's parental rights on the following grounds:

### § 2511. Grounds for involuntary termination

**(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary

- 3 -

consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. *In re C.P.*, 901 A.2d 516 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." *Id.* at 520. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121.

When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*Id.* (internal citations omitted).

"The statute permitting the termination of parental rights outlines

certain irreducible minimum requirements of care that parents must provide

for their children, and a parent who cannot or will not meet the requirements

within a reasonable time following intervention by the state, may properly be

considered unfit and may properly have his…rights terminated." ***In re***

***B.L.L.***, 787 A.2d 1007, 1013 (Pa.Super. 2001).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

Where a parent is incarcerated, the fact of incarceration

does not, in itself, provide grounds for the termination of parental rights. However, a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his…child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his…children.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations and quotation marks omitted). "[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the order and well-reasoned opinion of the Honorable Eugene E. Fike, II, we conclude Father's issues merit no relief. The trial court's order and Rule 1925(a) opinion comprehensively discuss and properly dispose of the questions presented. (*See* Trial Court Opinion, filed September 23, 2014, at 2-7; Trial Court Order, filed August 14, 2014, at 2-3) (finding: Father was incarcerated for various periods of time beginning in 2008, including at time of hearing on July 31, 2014; after Father's release from prison in July 2013, CYS prepared permanency plan and family service plan with primary goal of reunification; Father incurred new criminal charges in December 2013; Father did not exert significant effort to achieve objectives of plans, which included treatment of his drug and alcohol

addictions and achievement of financial and personal stability; Father failed drug tests on multiple occasions; although Father made contact for drug and alcohol assessment, he failed to follow up with intake or treatment recommended by Drug and Alcohol Commission; Father did not participate in required psychological evaluations; Father has not demonstrated financial and personal stability; in December 2013 meeting with CYS caseworker, Father reported his housing circumstances were uncertain because of his failure to pay rent; Father's testimony was unclear as to planned living arrangements after his expected release from prison in August 2014; Father has cancelled multiple scheduled visits with Child; classes and programs Father completed while in prison were not relevant to family service plan requirements and Father's specific needs for rehabilitation; CYS caseworker testified that Child has progressed in residential treatment facility; Child has far fewer outbursts and exhibits much less disruptive behavior; Child appears happy and well-adjusted, talking and interacting positively with foster family; caseworker testified that Child did not display significant positive bond with Father; Father failed to take responsibility for his previous failings and addictions, and failed to take advantage of opportunity to demonstrate improvement in parenting skills and ability to care for Child responsibly and safely; CYS proved by clear and convincing evidence that continued incapacity, neglect, and refusal of Father has caused Child to be without essential parental care, control, and subsistence necessary for

Child's physical or mental well-being; evidence is clear and convincing that Father cannot or will not remedy conditions that led to termination of his parental rights, and termination will best serve Child's needs and welfare). Accordingly, we affirm on the basis of the trial court opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/2015

# IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY PENNSYLVANIA

IN THE INTEREST OF:      )
J. M., a minor             )     No. 20014 of 2014, O.C. Adoption
                      )

## STATEMENT OF TRIAL COURT PURSUANT TO PA.R.A.P. 1925

The reasons for the rulings and errors complained of on appeal may be found in the trial court's Order of August 11, 2014, supplemented by the following discussion and summary of significant facts upon which the trial court's findings and conclusions were based.[1]

The subject child, J.M., Jr. was born June , 2002. Lawrence County Children and Youth Services ("CYS") first became involved with the child in the early spring of 2012. The Agency had previously been working with the child's older sister. At the time of contact with CYS, J.M., Jr. was residing in a residential treatment facility. His mother, B.M.L., was living in Ohio and had not had contact with the child for several years. The child's father and subject of these proceedings, J.M.,Sr., was incarcerated and was not able to provide care for J.M.

Sometime prior to CYS involvement, when the child was in his custody, J.M., Sr. was facing incarceration, and, consequently, asked his mother to care for the child.

---

[1] References to the testimony and other evidence are based on the trial court's notes.





Although initially accepting the responsibility, J.M., Sr.'s mother then passed away. Because of his continuing involvement with the criminal justice system and resulting inability to provide care, J.M., Sr. gave custody of the child to his sister and her husband. However, the paternal aunt and uncle were unable to cope with J.M., Jr.'s behavioral problems, and placed the child with CYS.

CYS took custody of J.M., Jr. on June 27, 2012, and the child was adjudicated dependent on July 12, 2012. A six-month review was held on December 3, 2012. Neither parent was present. After a continuance, further review was held on July 25, 2013, which J.M., Sr. attended. After several continuances, a review was held on March 13, 2014, also attended by J.M., Sr.[2]

J.M., Sr. was born June, 1971, and is 43 years old. He was incarcerated for varying periods of time, beginning in 2008. He was in jail for several weeks in June and July, and in September of 2008; for approximately three weeks in February and March of 2009; and from November 2010 to June 2012. In June 2012, J.M., Sr. had been released from state prison to the Penn Pavilion halfway house, but by consuming alcohol while on a home pass in violation of halfway house rules, he was returned to prison in September 2012 where he remained until expiration of his maximum in July 2013.

After his release from prison, CYS prepared a Permanency Plan and Family Service Plan, which J.M., Sr. signed on August 29, 2013. At that point, the primary goal was reunification.

The Family Service Plan established objectives for J.M., Sr. to pursue in order to demonstrate that the conditions that required J.M., Jr.'s placement could be remedied, and that J.M., Sr. could provide responsible parental care for the child.

---

[2] The dependency file at 47 of 2012 was incorporated into the record of these termination proceedings.



FILED/ORIGINAL

2014 SEP 23 P 2: 01

HELEN I. MORGAN
PRO AND CLERK

2

J.M., Sr. had a history of drug and alcohol addiction, and, consequently, one of the objectives was for J.M., Sr. to address his drug and alcohol issues. He was charged with the tasks, *inter alia,* of scheduling an assessment with the Drug and Alcohol Commission following all treatment recommendations; submitting to random drug screens; providing proof of all medications; refraining from illegal activity; participating in aftercare and support programs at least three meetings a week; and providing CYS with proof of attendance.

The Plan also established an objective for J.M., Sr. to address his mental health issues. J.M., Sr. was, *inter alia,* to schedule a mental health assessment through Human Services, attend all evaluation sessions, follow all recommended treatment, schedule a psychological evaluation, provide copies of the evaluations to CYS, and was to take no narcotic medication.

A further objective was for J.M., Sr. to address financial and personal stability, by establishing a residence and maintaining housing for the duration of the case, keep the home clean and free from clutter, provide age appropriate furnishings for the child, provide a private bedroom for the child, and if housing were not available, to use County agencies to find housing.

J.M., Sr. was to improve his parenting skills to show mastery in safely caring for the child. He was to register for a program through the Children's Advocacy Center, was to attend all sessions of the program, was to bring age-appropriate activities to engage the child during visits, and was to complete CPR and a first aid class.

The Plan, also, required J.M., Sr. to cooperate with CYS and service providers, and to attend visits with the child and engage in family therapy

FILED/ORIGINAL

2014 SEP 23 P 2: 0

HELEN I. MORGAN
PRO AND CLERK

3

After release from prison, J.M., Sr. did not exert significant effort to achieve the objectives of the Child Permanency Plan and Family Service Plan.

J.M., Sr. did not address his drug and alcohol issues.

After release from prison in 2013, five attempts were made to administer drug tests or screens. On July 25, 2013, J.M., Sr. tested positive for various drugs, including marijuana, amphetamines and methamphetamines. On August 29, September 12, and October 31, 2013, J.M., Sr. reported that he was unable to provide the required urine sample, although allowed to remain at the facility until closing time at 4:00 p.m. When at the testing facility on August 29, September 12, and October 31, 2013, J.M., Sr. had at least four hours to provide a specimen. Because of the failure to provide a sample, the screens were reported as positive. On December 4, 2013, J.M., Sr. admitted that he had taken various drugs, including marijuana, vicodin and amphetamines, and, therefore, the scheduled test was not administered.

Although making contact for a drug and alcohol assessment, J.M., Sr. did not follow up with intake or treatment recommended by the Drug and Alcohol Commission, as required.

After an initial contact with a mental health agency on September 5, 2013, J.M., Sr. did not remain for intake. There is no evidence that he has initiated or participated in the psychological evaluations required by the Family Service Plan.

J.M., Sr. has not demonstrated financial and personal stability. At the December 12, 2013 session with the Agency caseworker, it was reported that J.M., Sr.'s housing circumstances were uncertain because of failure to pay rent, and at a Decmber 18, 2013 meeting, J.M., Sr. reported that he was not living at an apartment where the child could

FILED/ORIGINA.

2014 SEP 23 P 2: 01

4

HELEN I. MORGA
PRO AND CLER

be accommodated. J.M., Sr. testified that he had lived at a recently acquired three-bedroom home in Ellwood City, Lawrence County; that he will be doing work for the owner as rent; and that his friend also lived there. However, his testimony was unclear as to whether he would be living at that location when released from jail and as to whether he would be ready for reunification with his son. In a conversation on March 12, 2014, it was reported that J.M., Sr. was being evicted from his residence.

At the July 31, 2014 hearing, the caseworker reported that J.M., Sr. had been arrested on criminal charges in late December 2013. As a result, J.M., Sr. was incarcerated in the Lawrence County Jail from December 31, 2013 to January 22, 2014. Subsequently, J.M., Sr. called the caseworker and reported that he had suffered a heart attack and was hospitalized in Allegheny General Hospital. In a February 5, 2014 conversation with the caseworker J.M., Sr. stated that he had been released from the hospital on February 1, 2014, and that he was going to a rehabilitation program in Ohio. However, J.M., Sr. was again incarcerated-- from March 30, 2014 to May 11, 2014 in the Lawrence County Jail, and then in the Beaver County Jail from May 28, 2014 up to the time of the hearing. J.M., Sr. represented that he was expecting to be released in August 2014.

At a December 2013 meeting, J.M., Sr. requested that the proceedings be suspended because of his desire to go to a rehabilitation program after the holidays. However, as noted above, he again was charged with criminal offenses, and arrested and incarcerated on December 31, 2013. The caseworker has not received any indication that J.M., Sr. made any attempt or effort to enroll in a rehabilitation facility or program.

FILED/ORIGINA'

2014 SEP 23 P 2: 01



HELEN I. MORGA'
PRO AND CLERK

5

J.M., Sr. did attend visits with the child on August 29, 2013, September 12, 2013. October 24, 2013, October 31, 2013, November 14, 2013 and December 4, 2013. However, he cancelled the visit scheduled for September 26, 2013, because of a reported death in his family, and cancelled the visits scheduled for October 3 and October 10, 2013, reporting that he had to attend hearings in court for a brother and nephew resulting from drug arrests. According to the caseworker, the visits on September 12 and October 31, 2013 were positive.

J.M., Sr. cooperated with CYS in the sense of maintaining communication and attending CYS meetings, but, as noted above, did not initiate services required by the Family Service Plan and did not communicate with service providers referred to in the Plan.

Although J.M., Sr. completed various classes and counseling programs while in prison, none of the classes or programs were relevant to J.M., Sr.'s needs for rehabilitation or to the requirements established by the Family Service Plan to show that he had remedied the conditions that had kept him from parenting his son.

According to the caseworker, J.M., Jr. struggled when initially placed in the residential treatment facility. Now, however, in a specialized foster home, the child has progressed, exhibiting far fewer outbursts and much less disruptive behavior. His IQ has advanced. The child appears happy and well-adjusted, talking and interacting positively with the foster family.

According to the caseworker, although recognizing and knowing J.M., Sr. at visits, J.M., Jr. has exhibited no positive bond with J.M., Sr.

J.M., Sr. failed to take responsibility for his previous failings and addiction, and failed to take advantage of the opportunity to demonstrate improvement in parenting skills and ability to care for the child responsibly and safely. No effort was made to engage in rehabilitation. Even after aware of the need to demonstrate ability to care for the child, J.M., Sr. again became involved with criminal activity resulting in renewed imprisonment.

The evidence is clear and convincing that continued incapacity, neglect and refusal of J.M., Sr. has caused the child to be without essential care, control and subsistence necessary for the child's physical or mental well-being, that the child has been in placement for over two years, that the conditions and causes of incapacity, neglect and refusal cannot or will not be remedied by J.M., Sr., and that termination will best serve the developmental, physical and emotional needs and welfare of the child.

The Prothonotary shall be responsible for properly serving a copy of this Statement upon counsel of record in accordance with Pa.R.C.P. 236 and Rule L236.

BY THE COURT:

SEPTEMBER 22, 2014

_____
Eugene E. Fike, II        Senior Judge

FILED/ORIGINAL

2014 SEP 23 P 2: 0

HELEN I. MORGAN
PRO AND CLERK

7

# IN THE COUERT OF COMMON PLEAS OF LAWRENCE COUNTY PENNSYLVANIA

IN THE INTEREST OF:      )
J. M., a minor          )     No.  20014 of 2014, O.C. Adoption
                       )

## ORDER

NOW, this _11ᵀᴴ_ day of ___August___, 2014, hearing on a Petition for Involuntary Termination of Parental Rights of the biological father, J.M.

, Sr. ("Father"), to the child, J.M. , Jr., having been held on July 31, 2014; Carolyn J. Flannery, Esq. having appeared on behalf of the Petitioner, Lawrence County Children and Youth Services; the biological father, J.M. , Sr., appearing, represented by Deborah A. Shaw, Esq.; Robert J. DiBuono, Esq. appearing as Guardian Ad Litem for the child, J.M. Jr., born June 2002; and noting that the parental rights of the biological mother, B.M.L. , were terminated previously by Order of April 15, 2014; the Court makes the following findings and ORDERS as follows:

1. The Court has proper jurisdiction and venue for the proceedings pursuant to 23 Pa.C.S.A. § 2302(2).

2. Proper service of the proceeding was made upon the biological father, pursuant to 23 Pa.C.S.A. § 2513(b).

FILED/ORIGINAL

2014 AUG 14  A 11: 30

HELEN I. MORGAN



10

3. Finding, *inter alia,* that, on June 27, 2012, the child was placed with Children and Youth Services by a paternal aunt and uncle, to whom the parents had given custody, while Father was incarcerated; that, although Father was in prison for significant periods of time from 2008 to the present, he did not take advantage of opportunities for remedying the conditions that led to the child's continued placement; that, although placed in a halfway house in 2012, he violated the rules while on a home pass, and that, although released from jail in July 2013, Father did not exert significant effort to achieve the goals and objectives of the Family Service Plan designed to assist Father in remedying the conditions that have cause the child's continued placement, and that Father, in fact, incurred new criminal charges resulting in renewed incarceration; the Court concludes that Children and Youth Services has established by clear and convincing evidence that the continued incapacity, neglect and refusal of Father has caused the child to be without essential parental care, control and subsistence necessary for his physical or mental well-being, that the child has been in placement for over two years, that the conditions and causes of the incapacity, neglect and refusal cannot or will not be remedied by Father, that termination will best serve the developmental, physical and emotional needs and welfare of the child, and that the Petition for Termination of Parental Rights of Father should be granted.

4. Children and Youth Services has met its burden of establishing by clear and convincing evidence that the grounds for involuntary termination of parental rights exist, pursuant to the provisions of 23 Pa.C.S.A. § 2511(a) (2).

5. The parental rights of the biological father, ⟨J. M.⟩, Sr., to the child ⟨J. M.⟩, Jr., born June 2002, are hereby forever terminated, and the biological father, ⟨J. M.⟩, Sr. shall have no further rights, privileges or obligations to the child.

6. Custody of the child shall remain with Lawrence County Children and Youth Services.

7. Attached to this Order and made a part hereof, is the notice to biological parents regarding the right to place, and update, personal and medical history information on file with the Court and the Department of Public Welfare, to be served upon the biological father, together with a certified copy of this Order. The Petitioner shall be responsible for service of the within Order and Notice, and shall file an appropriate affidavit of service.

8. The Prothonotary shall also be responsible for properly serving a copy of this Order upon Carolyn J. Flannery, Esq., counsel for Lawrence County Children and Youth Services; Deborah A. Shaw, Esq., counsel for the biological father, ⟨J. M.⟩, Sr.; and upon Robert DiBuono, Esq., Guardian Ad Litem for the child, in accordance with Pa.R.C.P. 236 and Rule L236.

BY THE COURT:

_____
Eugene E. Fike, II     Senior Judge

FILED/ORIGINAL

2014 AUG 14 A 11: 39

HELEN L. MORGAN