J-S06015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.R.M.F.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.S.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1386 MDA 2022 |

Appeal from the Order Entered August 29, 2022
In the Court of Common Pleas of Bradford County
Orphans' Court at No: 13ADOPTIONS2022

BEFORE:   STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:          **FILED: JULY 31, 2023**

Appellant, R.S.S., appeals from the August 29, 2022 order terminating his parental rights to L.R.M.F.-S. ("Child").  We affirm.

The record reveals that Bradford County Children and Youth Services (the "Agency") filed an emergency petition for protective custody after an October 7, 2020 report of Appellant's sexual abuse of Child (born in 2014). Appellant failed to appear at an October 13, 2020 shelter care hearing, which was then rescheduled for October 22, 2020.  Appellant once again failed to appear.  The hearing master made the following findings:

> The credible and uncontradicted testimony of R.S., Jr. established that he twice walked in on [Appellant] in the act of sexually abusing [Child—R.S. Jr.'s half-sister]:  once penetrating the child's vagina with his finger and on a second occasion attempting to insert his penis into the child's vagina.

_____

[*] Former Justice specially assigned to the Superior Court.

Orphans' Court's Findings of Fact and Conclusions of Law, 8/29/22, at ¶ 6.

Based on these findings, the Agency assumed physical and legal custody.

On March 25, 2021, on the motion of the Agency, the orphans' court made a finding of aggravated circumstances and directed that no efforts were to be made to reunify Child with Appellant.[1] Appellant never challenged that order, but at a September 17, 2021 hearing, Appellant maintained his innocence of the abuse and sought involvement with Child. In response, the Agency asked Appellant to undergo a sexual offender evaluation and provided Appellant with a list of providers. Appellant did not comply.

On March 11, 2022, the Agency filed a petition for the termination of Appellant's parental rights. The orphans' court conducted a hearing on August 23, 2022. In addition to the foregoing facts, the Agency produced evidence that Appellant poses an ongoing risk of inflicting physical abuse on Child. Child suffers from moderate to severe autism spectrum disorder, which Appellant, given his limited parenting capacity, cannot manage. Child is doing well with foster parents who can meet her special needs. While in placement, she has overcome malnourishment and grown to a healthy weight.

On August 29, 2022, the orphans' court issued the order on appeal, finding clear and convincing evidence in support of terminating Appellant's

---

[1] The definition of aggravated circumstances appears in 42 Pa.C.S.A. § 6302; it includes cases where the dependent child has been sexually abused by the parent. Upon a finding of aggravated circumstances, the orphans' court may permit the Agency to cease reunification efforts. 42 Pa.C.S.A. § 6341(c.1).

parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) and § 2511(b). Appellant filed this timely appeal, in which he argues that termination of his parental rights was not warranted under any subsection of § 2511.

Our standard of review is well-settled.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

*In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012) (citations omitted).

Instantly, Appellant claims the orphans' court's order was not supported by clear and convincing evidence because the orphans' court based its decision on the uncorroborated testimony of Appellant's minor son, R.S. Jr.[2] Beyond his criticism of the orphans' reliance on R.S., Jr.'s testimony, however, Appellant develops no legal argument under any subsection of § 2511(a).

---

[2] Appellant concedes, however, that the time to appeal from the findings of dependency and aggravated circumstances has passed. Appellant's Brief at 9.

We will focus our analysis on whether there exists clear and convincing evidence of for termination under § 2511(a)(2):

The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2). "The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *In re K.J.*, 936 A.2d 1128, 1131-32. "If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result." *Id.* "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015).

As described above, Child's placement resulted from Appellant's alleged sexual abuse of her. A hearing master found the allegations credible, and the orphans' court issued a finding of aggravated circumstances. Moreover, the orphans' court's decision did not rest merely on the testimony of R.S. Jr. (which the orphans' court was free to find credible). The record reflects that Appellant exhibited risk factors for future physical abuse of the Child. N.T. 8/23/22, at 47-48. Appellant has a limited capacity to parent and that he will

- 4 -

be unable to meet Child's special needs. Appellant exhibited little to no understanding of Child's autism spectrum disorder and how to care for and manage Child's behavior. *Id.* at 43-45. Child exhibited a lack of safety awareness around her house and elopement behavior, and Appellant's lack of understanding of Child's condition posed physical risks to her. In summary, the record reflects clear and convincing evidence of Appellant's affirmative misconduct and his continued incapacity to parent Child. We discern no error in the orphans' courts' decision to terminate Appellant's rights under § 2511(a)(2).

Next, we must consider Child's needs and welfare under § 2511(b).

> [I]f the grounds for termination under subsection (a) are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. [D]etermination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Recently, in *Interest of K.T.*, ___ A.3d ___, 2023 WL 4092986 (Pa. June 21, 2023), our Supreme Court explained that, under § 2511(b), "courts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above the concerns of the parent." *Id.* at *13. The court must consider the child's bond with pre-adoptive parents, if any, as well as the child's bond with the biological parent.

*Id.* at *14. The court must determine whether the trauma of breaking any bond with the biological parent is outweighed by the benefit of placing the child in a permanent home. *Id.* at *15 (citing *T.S.M.*, 71 A.3d at 53). The parental bond, as well as "permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical and emotional needs and welfare." *Id.* at *16. "[B]y evaluating the impact of severance to determine if it will impose more than an adverse or detrimental impact, courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's 'feelings' or 'affection' for the parent, which even badly abused and neglected children will retain." *Id.* In other words, courts must consider whether termination of parental rights will sever a parental bond that is "necessary and beneficial" to the child. *Id.* at *18.

The § 2511(b) inquiry also includes consideration of:

> [T]he child's need for permanency and length of time in foster care […], whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

*Id.* Trial courts have discretion to assign appropriate weight to each of these. *Id.*

Instantly, the orphans' court acknowledged the likelihood of a bond between Appellant and Child but made findings supporting a conclusion that the bond was not so necessary and beneficial to Child as to preclude

termination of Appellant's parental rights. *Id.* at 6. "[Child] did not and has never expressed in any way that she missed [Appellant] or that she wanted to return to his care. From the time she was placed in the pre-adoptive home […] she has received love, attention, care, and appropriate education and therapy." *Id.* On the other hand, Child was removed from Appellant's care due to sexual abuse and she was severely malnourished upon the Agency's assumption of custody. Orphans' Court Opinion, 7/10/23, at 3, 5. Child was unsafe in Appellant's home due to his inability to meet the needs posed by her autism spectrum disorder, and at risk of further abuse from Appellant. The orphans' court rejected Appellant's account of Child's "idyllic" life with him as "delusional." *Id.* at 7. On the other hand, Child's pre-adoptive family is able to manage her special needs and she is happy, thriving, and properly nourished with her pre-adoptive family, where she had been for approximately a year and a half as of the Agency's termination petition. Orphans' Court Opinion, 7/10/23, at 6.

In summary, the record supports a finding that the parent/child relationship is neither necessary nor beneficial to Child under the circumstances of this case and that any harm resulting from its severance is outweighed by the positives of Child's permanent placement with a family that can provide for her physical, developmental, and emotional needs. We discern no error in the orphans' court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/31/2023