J-S86045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.N.S., S.N.S., AND T.I.W.S. | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.R.W., NATURAL MOTHER | : : | No. 1260 WDA 2016 |

Appeal from the Order Dated July 19, 2016
In the Court of Common Pleas of Cambria County
Orphans' Court at No(s):  2016-8 IVT, 2016-9 IVT, 2016-10 IVT

BEFORE:  GANTMAN, P.J., MOULTON, J., and STEVENS, P.J.E.*

MEMORANDUM BY GANTMAN, P.J.:            **FILED DECEMBER 21, 2016**

Appellant, L.R.W. ("Mother"), appeals from the order entered in the

Cambria County Court of Common Pleas, which involuntarily terminated her

parental rights to minor children, A.N.S., S.N.S., and T.I.W.S. ("Children").

We affirm.

The trial court set forth the relevant facts and procedural history of

this case as follows:

> 1.      On January 6, 2016, [CYS] filed a Petition to Involuntarily Terminate the Parental Rights of [C.S. ("Father")], then age 51, and [Mother], then age 34, biological parents of [Children].
>
> *    *    *
>
> 4.      Hearings were conducted on May 13, 2016, and June 17, 2016.   Both parents were present at the hearings[.]

_____

*Former Justice specially assigned to the Superior Court.

5.      [A.N.S.] and [S.N.S.] had been adjudicated dependent in July 2006 and placed in the care of CYS. However, they were returned to [Mother] in August of 2008 and services [were] terminated to the family.

6.      CYS returned in August of 2013 due to reports between May 2013 and July 2013 that [Mother] did not have the ability to supervise [Children] and [F]ather was incarcerated.  The two youngest children, [S.N.S.] and [T.I.W.S.], then ages [7] and 2, were on the street alone, and during the past year [A.N.S.] and [S.N.S.] were absent or late for school.[1]

7.      After the initial adjudication hearing on August 21, 2013, the Juvenile Court provided a list of actions for [Mother] to take, including successfully completing parenting classes, supervision of [Children], financial responsibility classes, and making sure that the two [older] children attended school on a regular basis.  …

8.      Permanency Review Hearings were held on December 30, 2013 and January 29, 2014.  The Juvenile Court found [Mother] to be only minimally compliant with the Permanency Plan and [F]ather had no compliance with the plan.  [T.I.W.S.] was removed and placed with a paternal aunt, along with his sister [A.N.S.], who was uncooperative and defiant.  [S.N.S.] remained with [M]other.  [Father] remained incarcerated.

9.      At the Permanency Review Hearing held on June 2, 2014, the Juvenile Court again found [Mother] minimally compliant and [Father] had no compliance. Father was still incarcerated and determined not to be a placement option.

10.      At a Permanency Review Hearing held on August 13, 2014, [A.N.S.] and [T.I.W.S.] were removed from the home of the aunt and [S.N.S.] was removed from [Mother].  The Juvenile Court also made a finding that

---

[1] CYS' involvement with the family was also based on reports of household issues and financial instability.

neither parent would be a placement option. The Juvenile Court seemed frustrated that despite years of providing various services, [Mother] had not been able to alleviate the circumstances which led to CYS involvement for the past nine years.

11. Subsequent Permanency Review Hearings were held on June 10, 2015; November 25, 2015; and April 20, 2016, with consistent findings of minimal or no compliance by [Mother] and absolutely no compliance by [Father] who had been in and out of jail.

12. Dennis Kashurba, a licensed psychologist, evaluated [Mother] on two occasions resulting in reports dated July 21, 2006, and March 6, 2008. …

\* \* \*

14. [Mother] failed to show for a January 8, 2014 evaluation.

(Trial Court Order, filed July 19, 2016, at 1-5) (unpaginated). On January 6, 2016, CYS filed a petition for involuntary termination of Mother's and Father's parental rights to Children. Following two hearings on the petition, the court terminated the parental rights of Mother and Father to Children on July 19, 2016. On August 10, 2016, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother raises the following issue for our review:

WHETHER THE COURT EITHER ABUSED ITS DISCRETION OR COMMITTED AN ERROR OF LAW WHEN IT GRANTED THE PETITION FOR INVOLUNTARY TERMINATION OF PARENTAL RIGHTS, THEREBY TERMINATING THE PARENTAL RIGHTS OF [MOTHER] TO [CHILDREN?]

(Mother's Brief at 2).

- 3 -

Mother argues she did not demonstrate a settled purpose of relinquishing her parental rights to Children. Mother asserts she did not refuse or fail to perform parental duties. Mother contends the evidence showed her interest in Children and her active steps to bring them back into her custody. Mother claims she has long-term stable housing and has obtained available public assistance. Mother avers her testimony established her home was clean, organized, and suitable for Children. Mother maintains she also established her utilities were on and she was making acceptable payments to the service providers. Mother asserts she completed parenting classes and attended all scheduled visits with Children. Mother submits CYS relied on old records and outdated information. Mother claims she is being punished for her back condition, which temporarily hindered her ability to parent Children. Mother contends no evidence demonstrated the continued existence of the conditions which led to the removal of Children from her custody. Mother argues the trial court found, contrary to the record, that no bond existed between Mother and T.I.W.S. Mother avers CYS presented no evidence that Mother's bonds with Children were unhealthy, or that Children had positive bonds with their foster parents. Mother concedes Children have done well in foster care but insists Children would benefit equally, if not more, by returning home to Mother. Mother concludes the court abused its discretion when it terminated her parental rights to Children. We disagree.

The standard and scope of review applicable in termination of parental

rights cases are as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

CYS sought the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition

filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would

best serve the needs and welfare of the child.

\*     \*     \*

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." ***In re Z.P.***, 994 A.2d 1108, 1117 (Pa.Super. 2010).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. ***In re C.P.***, 901 A.2d 516 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." ***Id.*** at 520. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***In re Z.P., supra*** at 1121. "[T]he mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." ***In re T.S.M.***, 620

Pa. 602, 629, 71 A.3d 251, 267 (2013). "[I]t is an immutable psychological truth that even the most abused of children will often harbor some positive emotion towards the abusive parent." *Id.* *See also In re K.Z.S.*, 946 A.2d 753 (Pa.Super. 2008) (affirming trial court's decision to terminate mother's parental rights, where trial court found placing child with mother would have negative impact on child and would not be in child's best interest; no evidence suggested mother had bond with child comparable to child's strong bond with foster parent, or that terminating mother's parental rights would sever existing beneficial relationship or cause irreparable harm to child).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have…her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations and quotation marks omitted).

"[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of…her potential in a permanent, healthy, safe environment." *Id.* at 856.

Instantly, the trial court reasoned as follows:

> After review of the CYS records of the Independent Family Services [("IFS")] monthly reports, participation in monthly case review with [IFS] and in consultation with the CYS caseworker, [Dr.] Kashurba concluded that:
>
>> The total information available at the present time suggests quite convincingly that [Mother's] ability to independently implement parenting strategies that have been provided to her over the past several years' time has not improved to a degree that would suggest that she can appropriately independently

parent any of her children on an ongoing basis. … Monthly consultation during the course of [Mother's] [IFS] treatment indicate[s] that she continues to "parent from the couch" and that she is able to explain what techniques she should employ with [Children] but continues to not be able to implement these on an independent basis. … The escalating behavioral challenges of the older children also speaks for itself in that inadequate supervision and discipline on [Mother's] part places these children at risk of harm due to their risky behaviors.

\*     \*     \*

A caseworker for [IFS], which began providing services to [Mother], summarizes her experience with [Mother] as follows:

In summary, while it appeared as though [Mother] was initially interested in participating in the IFS Home Management Program, she became uninterested in participating. [Mother's] general lack of concern for her home and [C]hildren and her lack of interest to improve her cleaning skills, financial skills and eliminate safety issues within the home made the home unsafe for [Children]. IFS Home Management Services were terminated when [Children] were removed from the home on August 13, 2014.…

[B]everly A. Ragan, a CASA volunteer for 12 years, …in her June 2, 2015 report to the Juvenile Court dealing with [Children] and two of their siblings not involved in the present case, stated as follows:

This sibling group was removed in 2006 returned home only to come back into the system in 2013. These children need stability in their lives. They have been on an emotional roller coaster, which has manifested itself with many disruptive behaviors.

\*     \*     \*

The [c]ourt next considers the bond, if any, which each of

- 10 -

the parents have with [Children]. … As regards [Mother], there is a bond between her and each of her two older children, [A.N.S.] and [S.N.S.] None exists with [T.I.W.S.]

[I]n summary, [Mother and Father] have demonstrated an inability to perform their parental duties and they lack the motivation of performing these duties within a reasonable period of time.

[I]n terminating the parental rights of [Mother and Father], the [c]ourt finds that such termination is in the best interests of [Children] and that termination will best meet the developmental, physical, and emotional needs and welfare of [Children].

* * *

Each of the children deserves to have a better life. [S.N.S.] no longer exhibits significant behavioral issues or excessive school absences. [S.N.S.] is often on the Honor Roll at school, and she is active in multiple enrichment activities. [A.N.S.] no longer exhibits behavioral issues or excessive school absences. [A.N.S.] is now involved in a prestigious higher achiever program through her school and she is active in multiple enrichment activities. [T.I.W.S.] has flourished in his kinship foster home. He no longer exhibits significant behavioral issues and has developed a strong bond with his kinship foster family.

In summary, all of these children are doing well in foster care.

[Ms.] Ragan testified at the May 13, 2016 hearing concerning [Mother] and [Children] as follows:

> And I know this and I know [Mother's] background and I know that she has got some unresolved issues of herself and that's from years of working with her and understanding her background. But her children are being destroyed by her inability in not seeking help sooner for herself.

(Trial Court Order at 5-9) (unpaginated). We accept the court's analysis.

- 11 -

CYS has been involved with Mother repeatedly over the last decade. The IFS worker testified that Mother was unable to stabilize financially or maintain the household, despite the assistance she received from IFS in the year after Children were adjudicated dependent. Mother exhausted every county social agency for financial assistance but still failed to meet monthly living expenses. Mother expressed an interest in working part-time due to a disability but failed to secure employment. Rooms in the house were extremely dirty and occasionally impassable. Mother submitted photographs purporting to show the suitability of the home for Children, but those photographs were taken well after the termination petition was filed and were not considered by the court. *See* 23 Pa.C.S.A. § 2511(b). Children often appeared unkempt in dirty clothing and laundry would pile up in the house. A CYS caseworker testified that Children were out of control at times during visits, but Mother was unresponsive. The court-appointed special advocate described the visits as chaotic. The caseworker also testified that Mother made no effort to initiate services after IFS was unsuccessful and Children were removed from her home. Dr. Kashurba opined that Mother has failed to improve her ability to implement parenting strategies to a point where she can appropriately parent Children on an ongoing basis. Dr. Kashurba stated that Mother's inadequate supervision and discipline of Children places them at risk of harm. Thus, CYS presented clear and convincing evidence to warrant termination of Mother's parental rights to

Children under Sections 2511(a)(1), (2), (5), and (8). *See In re Adoption of K.J., supra*.

With respect to Section 2511(b), the CYS caseworker testified that Children have bonds with Mother but stated A.N.S. and S.N.S. are old enough to recognize the stability of their current living arrangement and want to remain in foster care.[2] The caseworker further testified that Children have strong bonds with their foster parents. The caseworker provided extensive testimony on the improvement of Children's behavior and lives since they were placed in a stable and structured foster care environment. The caseworker opined that Mother is unable to provide stability to any of Children in a manner that would allow them to flourish as they have in foster care. The caseworker concluded termination of Mother's parental rights was in Children's best interest. The trial court's Section 2511(b) analysis makes clear it considered the caseworker's testimony and whether severing Mother's bond with Children would destroy an existing, necessary and beneficial relationship. *See In re Z.P., supra*. No "magic words" were required. *See In re K.Z.S., supra*. The record supports the court's conclusion that termination of Mother's parental rights is in Children's

---

[2] The caseworker responded "yes" to the question, "Have you noticed a bond between [Mother] and the children?" (N.T. Termination Hearing, 5/13/16, at 21). During the ensuing questioning, however, the caseworker referred specifically to A.N.S. and S.N.S. It is unclear whether the caseworker intended to convey that Mother has a bond with T.I.W.S. as well.

best interests.[3]   **See** 23 Pa.C.S.A. § 2511(b); ***In re C.P., supra***.

Accordingly, we affirm.[4]

Order affirmed.

_____

[3] The court in part relied on exhibits absent from the certified record, but the information quoted from those exhibits mirrors the testimony of the caseworkers and psychologist at the termination hearings.

[4] On October 28, 2016, Mother filed a motion to consolidate this appeal with the appeal she filed at 1219 WDA 2016.  Mother's stated basis for that appeal is the trial court's finding of aggravated circumstances with respect to the dependency adjudication of one of Mother's other children, K.S.  The appeal at 1219 WDA 2016 is from a different order and involves a distinct issue, which Mother has not briefed.  **See** Pa.R.A.P. 513 (stating this Court may exercise its discretion to consolidate multiple appeals where more than one appeal is from same order, or where same question is involved in two or more appeals in different cases).  Therefore, we deny Mother's motion to consolidate.  Mother may take whatever action she deems necessary in the appeal at 1219 WDA 2016 in the wake of this Court's disposition of the current appeal.

Separately, Father filed a brief as a "participant" in this appeal, arguing that the court improperly terminated his parental rights to Children.  On November 7, 2016, CYS and the guardian *ad litem* ("GAL") filed motions to "quash" Father's brief in whole or in part.  Father at no time filed a notice of appeal from the trial court's order terminating **his** parental rights.  Father may not simply "piggyback" on Mother's notice of appeal.  Consequently, this Court has no jurisdiction over his claims.  **See** Pa.R.A.P. 903(a) (stating notice of appeal must be filed within thirty days after entry of order form which appeal is taken); ***Commonwealth v. Green***, 862 A.2d 613 (Pa.Super. 2004), *appeal denied*, 584 Pa. 692, 882 A.2d 477 (2005) (stating jurisdiction is vested in Superior Court upon filing of timely notice of appeal).  Therefore, we grant CYS' and the GAL's open motions and suppress Father's brief in full.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/21/2016</u>