J-S92045-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.M., NATURAL FATHER | : | |
| | : | No. 1243 WDA 2016 |

Appeal from the Decree Entered July 22, 2016
in the Court of Common Pleas of Fayette County
Orphans' Court, at No(s): 12 Adopt 2016

BEFORE:     SHOGAN, MOULTON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 27, 2017**

R.M. (Father) appeals from the July 22, 2016 decree that granted the petition of Fayette County Children & Youth Services (CYS) to terminate involuntarily Father's parental rights to his minor son, M.M. (Child). After careful review, we affirm.

In its opinion pursuant to Pa.R.A.P. 1925, the orphans' court set forth the following findings of fact, which were stated on the record, at the conclusion of the termination hearing:

> [C]hild was born [with drugs in his system in April 2013]. [C]hild was adjudicated dependent after the birth with custody [given] to [F]ather and the case was terminated in June 2014. The drug use of the parents rendered them unable to provide proper care for [C]hild and he was again adjudicated dependent on November 24[], 2014. A family service plan was developed with a goal toward achieving reunification between the parents and [C]hild.
>
> The requirements of the family service plan appropriately addressed the issues that caused the removal of [C]hild. [The services included, *inter alia*, maintaining drug and alcohol sobriety, addressing mental health issues, and completing

*Retired Senior Judge assigned to the Superior Court.

parenting classes.].   [Father] has failed to comply with the family service plan and has failed to complete any of the goals of the plan with the exception of finally having completed parenting classes, although he was observed to have much difficulty staying awake during some of those classes.

The [orphans' court] finds that a bonding assessment was completed in December 2015 by Carol Patterson, an expert child psychologist qualified to perform bonding assessments.  [C]hild exhibits no bond at all with either parent and the child exhibits a strong bond with the foster parents.  [Father] failed [] to submit to nearly half of the drug tests requested   [Father] tested positive for illegal non-prescribed drugs for each of the drug tests he completed from April, 2015 through September, 2015. From October 8[], 2015 through June 13[], 2016, there were 65 attempts to have [F]ather submit to drug testing. Only 16 tests were actually completed and he tested positive for various unprescribed drugs each time.  [Father] has asserted he has a proper prescription, however, he has only provided pill bottles with all identifying provider information blackened out and he has failed to provide any requested pill count.

On January 8[], 2016, [Father] appeared at the [CYS office] visibly and significantly impaired with slurred speech, staggering walk, and incoherent behavior.  Although [Father] completed inpatient rehab on December 9[], 2014, he has not maintained sobriety since that time.  The continued use of non-prescribed and illegal drugs by [F]ather renders him unable to provide care for [C]hild.

Neither parent has attended doctor and/or dental visits with [C]hild, although the opportunity was offered to them by [CYS].  Although the parents continue visitation with [C]hild they have not maintained a bond with [C]hild.  Neither parent has cooperated with [CYS] in that neither has provided current contact information to [CYS] as of this date.

Orphans' Court Opinion, 9/30/2016 at 3-4.

On March 24, 2016, CYS filed a petition to terminate involuntarily the

parental rights of Father.  Hearings were held on June 22, 2016, and July

22, 2016.[1]  On July 22, 2016, the parental rights of both Mother and Father were terminated for Child.[2]  This appeal followed.[3]

Father presents one question for this Court's consideration:  "Did the [orphans'] court abuse its discretion in terminating the parental rights of [Father], as [CYS] failed to present sufficient evidence to sustain its burden of proof?"  Father's Brief at 3 (unnecessary capitalization omitted).

We begin with our standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

---

[1] Father failed to appear for the hearing held on July 22, 2016.  The orphans' court was informed by Father's attorney that Father "was given notice of the hearing, and [Father] refuse[d] to give his phone number and ha[d] not contacted [his attorney].  The hearing proceeded in Father's absence."  Orphans' Court Opinion, 9/30/2016, at n.1.

[2] This appeal does not address the order terminating Mother's parental rights to Child.

[3] Both Father and the orphans' court complied with Pa.R.A.P. 1925.

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007).

Here, the orphans' court determined that CYS met its burdens under subsections (a)(1), (a)(2), (a)(5), and (a)(8) of 23 Pa.C.S. § 2511. "While the trial court found that [] CYS met its burden of proof under each section [mentioned] above, we need only agree with its decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004). Here, we focus on subsection (a)(8). The following are the applicable portions of the governing statute.

> **(a)** **General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date

of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) … or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Section 2511(a)(8) represents the determination that "a parent's basic constitutional right to the custody and rearing of his … child is converted, upon the failure to fulfill … parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In the Interest of K.Z.S.*, 946 A.2d 753, 759-60 (Pa. Super. 2008) (quoting *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004)).

Instantly, there is no dispute that Child had been out of Father's care over 12 months at the time of the hearing.

Once the 12–month period has been established, the court must next determine whether the conditions that led to the [children's] removal continue to exist, despite the reasonable good faith efforts of [DHS] supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy

- 5 -

the conditions that initially caused placement or the availability or efficacy of [DHS] services.

**K.Z.S.**, supra at 759 (quoting **In re Adoption of K.J.**, 936 A.2d 1128, 1133 (Pa. Super. 2007)).

The orphans' court offered the following analysis:

The condition which led to [C]hild's placement involved the drug use of the parents, which rendered them unable to provide proper care for [C]hild. CYS developed a family service plan with the goal toward achieving reunification, and the requirements of the plan appropriately addressed the issues that caused the placement of [C]hild. However, Father failed to comply with the plan, and he failed to complete the goals of the plan. After Father completed inpatient drug and alcohol rehabilitation in December 2014, Father failed to maintain sobriety. Despite regular, consistent requests for drug tests by [CYS], Father failed to cooperate to submit drug screens, and on 16 occasions from October 8, 2015, through June 13, 2016, he tested positive for nonprescribed drugs. On January 8, 2016, Father was observed at [CYS's office] to be significantly impaired, with slurred speech, staggering walk, and incoherent behavior.

The final element of Section 2511(a)(8) requires an examination of whether termination would best serve the needs and welfare of the child. At the time of the hearing, [Child] was just over three years old, and he had been in foster care more than half his life. The child remains in the same foster home where he was placed in November 2015, and his foster parents offer permanency for him through adoption.

Orphans' Court Opinion, 9/30/2016, at 6-7.

The orphans' court's conclusions are supported by the record. While Father avers he has taken steps towards remaining sober, Father's brief at 14, the orphans' court found that he was unable to maintain sobriety.

- 6 -

Father's issues with drugs, which caused Child to be adjudicated dependent, continue to exist.[4]  N.T., 7/22/2016, at 23-26.  This Court is cognizant

> that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of [his/her child.] … However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

*In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

For the reasons cited *supra*, we conclude that the orphans' court did not err in finding that that the "conditions which led to the removal or placement of [C]hild continue to exist." 23 Pa.C.S. § 2511(a)(8). Accordingly, we turn to subsection (b).

Subsection 2511(b) provides, in relevant part: "The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b).  We have explained the analysis under this subsection as follows.

---

[4] As recently as January 2016, CYS workers reported that Father arrived at their office for a scheduled visit with Child and was "very much high." Child's caseworker testified that Father's eyes were bloodshot and he was slurring his words.  CYS requested a drug test before Father visited with Child.  Father told the caseworker there was "nothing wrong with him" and left before visiting with Child.  N.T., 7/22/2016, at 24-25.

Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child. … [T]he trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (internal citations and quotation marks omitted).

The orphans' court offered a detailed explanation of its findings under subsection 2511(b).

CYS presented evidence through the expert testimony of Carol Patterson, a child psychologist whose expertise includes bonding assessments. Ms. Patterson opined that [Child] displayed no bond or attachment with his parents. [C]hild displays a strong bond and attachment with his foster parents, and he refers to them as "mommy" and "daddy". Further, Ms. Patterson opined that termination of parental rights would not harm [C]hild, because [C]hild demonstrated no bond or attachment with his parents; and the [C]hild's physical, developmental, and emotional needs and welfare can be met through the adoption by the foster parents.

Orphans' Court Opinion, 9/30/2016, at 7.

Father offers the following argument that the orphans' court's decision is not in the best interest of Child.

[T]he accuracy of the bonding assessment that was conducted by Carol Patterson is highly suspect based on the facts that Carol Patterson admitted that she normally finds no bond when the child is under four (4) years of age, and that Carol Patterson[] observed Father's interaction with child occurred at CYS whereas Carol Patterson observed foster parents' interaction with the child occurred in the foster home.

> In fact, [C]hild evidenced a strong bond to [F]ather when the child referred to Father as "daddy." Termination of Father's parental rights would destroy this bond, which would not be in the best interests of the child. Therefore, CYS has failed to present clear and convincing evidence necessary to sustain its burden of proof upon this claim.

Father's Brief at 14 (citations omitted).

Father's argument essentially attacks the credibility of Ms. Patterson. It is well-settled that "our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012).

Here, the record establishes that Ms. Patterson conducted a bonding assessment where she observed Child's interaction with Father and his foster parents, and found no bond existed with Father.[5] N.T., 6/22/2016, at 11-13, 17. Although Father contends that Ms. Patterson testified that she "normally finds no bond when the child is under four years old[,]" Father's brief at 14, the record indicates otherwise. Contrary to Father's averments,

_____

[5] Ms. Patterson explained her reasoning for choosing to conduct the bonding assessment with Father at CYS's office.

> I choose the location for my bonding assessments, generally, within the fosters['] home where the child is most familiar with those people and, generally, in the place where the child visits with the parents where he is most familiar with the biological parents. So the room would have been the room where [Child] visited with [Father] and [Child] was familiar with the couches, the toys, the atmosphere.

N.T., 6/22/2016, at 23-24.

Ms. Patterson testified that she **does** find bonds involving young children, however these bonds are often times found with the child's foster parents or current caretaker. *Id.* at 21-22. Indeed, Ms. Patterson found that Child had a strong bond with his foster parents. *Id.* at 17.

Lastly, Father provides no evidence, other than the fact that Child referred to him as "daddy" during the bonding assessment, to support his contention that a strong bond exists.[6] To the contrary, Ms. Patterson testified that Child "did not initiate or reciprocate any affectionate behavior towards [Father] and he had one behavioral issue with [Father] when [Child] deliberately hit [Father]. [Child] also had no response to several, I love you's by his Father." N.T., 6/22/2016, at 12-13. Here, the record clearly supports the orphans' court's conclusion that terminating Father's parental rights will have no detrimental effects on Child and will best serve Child's needs. *See id.* at 18-19 (when testifying to her findings following the completion of the bonding assessment, Ms. Patterson stated: "Because [Child] demonstrated no bond or attachment with his parents at this evaluation, and a strong bond and attachment with his foster parents, if a more permanent arrangement is chosen for him, it would not harm him developmentally, physically or emotionally at this time.").

---

[6] Ms. Patterson testified that Child referred to foster parents as "mommy and daddy." N.T., 6/22/2016, at 17.

Accordingly, we discern no error of law or abuse of discretion in the orphans' court's determination

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 1/27/2017