J-S07031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.F., MOTHER | : | No. 1226 WDA 2020 |

Appeal from the Order Dated October 15, 2020
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000213-2019

BEFORE: SHOGAN, J., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: March 31, 2021**

Appellant, K.F. ("Mother"), appeals from the order entered in the Allegheny County Court of Common Pleas, Orphans' Court, which granted the petition of Children Youth and Families ("CYF") for involuntary termination of Mother's parental rights to her minor child, A.D. ("Child"). We affirm.

The relevant facts and procedural history of this case are as follows:

> Mother's first child was born [in] August…2010. [CYF] was briefly involved but the case closed successfully. [CYF] received another referral in 2013 after receiving reports that Mother was due to give birth to her second child and had become homeless. Mother's second child was born [in] February…2013. After receiving this referral, and assessing Mother, the agency discovered that she suffered from untreated mental health issues and had been the victim of domestic violence in both her past and present relationships. At that time, the case became court active and goals were set for Mother that included engaging in mental health treatment consistently and attending intimate partner violence (hereinafter "IPV") counseling. Mother's third child was born [in] June…2014. Mother reported

domestic violence between her and that father. She sought a [protection from abuse ("PFA") order] against him in fall of 2015. Mother's fourth child was born [in] April…2016. There was also domestic violence in this relationship and Mother sought a PFA against this father in April of 2016. One of Mother's older children reported sexual abuse by this Father as well. Mother made little progress with respect to her goals of attending mental health treatment and IPV counseling. As a result, [CYF] filed Petitions to Terminate Mother's parental rights with respect to all four of the older children. Shortly thereafter, Mother began an online relationship with D.D. (hereinafter "[F]ather"). He resided in Virginia and the two never met in person until he moved in with her in September of 2017. Mother was [allusive] about this relationship and continued to deny that the two were a couple for some time. This was obviously troubling to [CYF] given Mother's history of unhealthy and abusive relationships. Mother became pregnant with A.D. in the spring of 2018. Mother was somewhat more truthful about the nature of the relationship after [CYF] learned of the pregnancy. Mother obtained a temporary PFA order against Father on June 1st, 2018 alleging that he had shoved her against the wall and that she was in fear for her and her unborn child's safety. Mother did not pursue a final PFA against Father and continued the relationship despite [CYF's] and the court's concerns.

Mother's parental rights [to] her four older children were terminated on December 21, 2018. [Child] was born [in] January…2019. [CYF] obtained an Emergency Custody Authorization on January 23rd, 2019 and [Child] was placed in foster care upon his release from the hospital on January 24th, 2019. [Child] was adjudicated dependent on March 6th, 2019, and Mother was ordered to continue mental health treatment and to attend consistently. Visitation was permitted to be liberal but supervised. On April 9th, 2019 Mother sought a secondary temporary PFA against [Child's] Father[,] alleging that he was "verbally abusive" and had threatened to kill her. She did not obtain a final PFA order.

The parties appeared for a Permanency Review Hearing on June 19th, 2019 and Mother was found to be in moderate compliance as she had been attending mental health treatment. However, the court noted that she had missed

nineteen visits during that reporting period. The court ordered Mother's visits be reduced if she missed two consecutive days of visitation. The court also ordered Mother to follow through with a final PFA against [F]ather and to undergo an updated mental health evaluation to determine if she was receiving the correct level of treatment. The court granted [CYF] permission to place [Child] in an appropriate foster home and he was subsequently placed in the foster home of S.I. and J.I. that month.[1]

[1] The child currently resides in this foster home.

The parties appeared for a Permanency Hearing on September 18th, 2019. Mother was found to be in minimal compliance as she had only attended eleven out of thirty-four visits during that reporting period and was not engaged in mental health treatment. The court ordered Mother to engage in mental health treatment. Mother's visits were to remain status quo but the court granted [CYF] permission to reduce visits to once a week if Mother missed two consecutive visits. [CYF] filed the Petition to Involuntarily Terminate Mother's Rights on December 9th, 2019.

The parties appeared for a Permanency Hearing on January 21st, 2020. Mother was found to be in minimal compliance as she had not yet signed releases for [CYF] to verify her attendance in mental health treatment and had missed eleven out of twenty-six visits during that reporting period. The court ordered Mother to engage in mental health treatment and to sign releases for [CYF] so that they could verify her attendance. Mother's visits were ordered to remain status quo and [CYF] was again given permission to reduce the visitation if Mother missed two consecutive visits. An amended Termination Petition was filed on February 18th, 2020 adding subsection 8 to the pleadings. The parties appeared for a Permanency Hearing on June 9th, 2020. Mother was found to be in minimal compliance as she had not remained in contact with [CYF] and had not attended mental health treatment. The court ordered Mother to re-engage in mental health treatment, participate in [IPV] counseling, and to undergo a drug and alcohol evaluation. The court ordered Mother to have one supervised visit a week once in-person visitation resumed.[2]

- 3 -

> ² Visits were not permitted to be in-person and were done virtually due to the pandemic.

> Dr. Bliss was the court-appointed psychologist assigned to evaluate the family. She conducted individual psychological evaluations of Mother as well as interactional evaluations of Mother and [Child] on August 17th, 2017, May 10th, 2018, October 19th, 2018, December 24th, 2019 and August 16th, 2020. Mother's mental health issues and her lack of consistent treatment were a concern in every individual evaluation that Dr. Bliss conducted. Dr. Bliss reported that Mother eventually began to gain insight into the reasons that she continued to seek out unhealthy relationships. Throughout her history of evaluating Mother, Dr. Bliss has consistently recommended that Mother attend mental health and [IPV] counseling consistently. Dr. Bliss has repeatedly concluded that Mother's mental health diagnosis of Post-Traumatic Stress Disorder (hereinafter ["PTSD"]) and a personality disorder have prevented her from breaking the cycle of engaging in unhealthy and abusive relationships. It was reported that despite these long-standing [diagnoses] and the termination of her parental rights to the older four children, Mother continued to believe that she did not have any problems. Dr. Bliss also concluded on multiple occasions, this cycle of jumping into unhealthy romantic relationships and maintaining unhealthy relationships with family members would continue if Mother did not address her issues with consistent mental health treatment and IPV counseling. In her last evaluation of Mother in August of 2020, Dr. Bliss opined that Mother was not in a position to reunify with her son.

> Dr. Bliss was also able to evaluate [Child's] foster family twice. She reported that he is attached and bonded to all of his foster family members. She noted that he was closely bonded to his foster mom and opined that he appeared to view her as his psychological parent.

(Orphans' Court Opinion, filed 12/14/20, at 2-6).

The court held a hearing on the termination petition on August 28, 2020.

In addition to the testimony of Dr. Bliss, CYF presented the testimony of

- 4 -

Brittany Weaver, Mother's outpatient therapist, and David Sprague, CYF caseworker. (N.T. Termination Hearing, 8/28/20, at 9-66). Mother testified on her own behalf. (*Id.* at 67-73).

At the conclusion of the hearing, the court held the matter under advisement. On October 15, 2020,[1] having determined that CYS proved all necessary elements of 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b), the court entered an order involuntarily terminating Mother's parental rights to Child. On November 12, 2020, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal.[2]

Mother raises the following issue for our review:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of [Mother's] parental rights would serve the needs and welfare of [Child] pursuant to 23 Pa.C.S. § 2511(b)?

(Mother's Brief at 6).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

---

[1] The order is dated August 28, 2020, but was not filed until October 15, 2020.

[2] Although Father's parental rights were terminated the same day, he is not a party to the instant appeal and did not file a separate appeal.

***In re Z.P.***, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting ***In re I.J.***, 972

A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. ... We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

***In re B.L.W.***, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*,

581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> ***In re Adoption of A.C.H.***, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. ***In re J.D.W.M.***, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16, (quoting ***In re Adoption of K.J.***, 936 A.2d

1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165

(2008)).

CYF petitioned for the involuntary termination of Mother's parental

- 6 -

rights to Child on the following grounds:

### § 2511. Grounds for involuntary termination

**(a)      General Rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

*      *      *

(2)    The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

*      *      *

(5)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

*      *      *

(8)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

*      *      *

**(b)        Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

*        *        *

23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." **In re Z.P., supra** at 1117.  When conducting a termination analysis:

> Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of ... [her] parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

**In re L.M.**, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

On appeal, Mother concedes that grounds for termination existed pursuant to 23 Pa.C.S.A. § 2511(a)(2).  (Mother's Brief at 12-13).  However, she contends that termination is not in the best interests of Child and that the court erred by focusing its analysis on Mother's failure to address her goals appropriately, rather than Child's needs and welfare.  (**Id.** at 15-16).  Mother

insists that she has a bond with Child which the court acknowledged, but discounted based upon Dr. Bliss' recommendations. (***Id.*** at 16). Mother concludes the court erred in terminating her parental rights under Section 2511(b), and this Court must reverse. We disagree.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. ***In re C.P.***, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." ***Id.*** Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

***In re Z.P., supra*** at 1121 (internal citations omitted). The mere existence of a bond between a parent and child does not preclude termination. ***In re N.A.M.***, 33 A.3d 95, 103 (Pa.Super. 2011). Even where the court acknowledges that a parent and child share a bond, termination is still appropriate where termination will not be detrimental to the child and will serve the child's best interests by allowing him to find permanency with an

adoptive family. ***See In re Adoption of C.D.R.***, 111 A.3d 1212, 1220 (Pa.Super. 2015).

Instantly, the court observed that Mother's goals have remained the same over the last several years: namely, to attend mental health and IPV counseling on a consistent basis, and to make visitation with Child a priority. (***See*** Orphans' Court Opinion at 7-8). Mother's mental health diagnoses of PTSD and a personality disorder require consistent treatment to manage. (***Id.***) Mother's failure to manage her conditions, and her resulting tendency to engage in a cycle of abusive relationships, are the primary obstacle to reunification. (***Id.***) With regard to Mother's attempts to meet her goals, the court noted:

> It is also concerning that Mother has not made her visits with [Child] a priority. The court recognizes that the pandemic has created unique challenges for families involved with the juvenile court system. The court cannot punish Mother for failing to attend her visits and mental health treatment if she did not have access to the internet. However, these issues occurred before March of 2020. The pandemic further exacerbated Mother's poor attendance at visitation and treatment.
>
> Mother has also been recommended and court[-]ordered to attend IPV counseling in the hopes that she could begin to recognize the impact of these abusive relationships on not only herself but her children. Mother did not avail herself of this service until very recently. Mother continued to engage in a romantic relationship with Father despite multiple incidents of domestic violence. She never followed through with a final PFA against Father despite being recommended from the court to do so. The court has no doubt that [Child] would have been exposed to domestic violence had [CYF] not sought removal from Mother's care. Mother has not been able to put her son's needs ahead of her own in this

regard. Even in her most recent evaluation with Dr. Bliss, Mother was asked why she needs to better understand how to know if someone is taking advantage of her, she reported a desire to not have her heart broken again as a reason to refrain from engaging in unhealthy relationships. Mother never mentioned concerns for her children's safety. Given Mother's history, the court has no doubt that these issues would persist into the future. It is clear that Mother does not possess the insight needed to keep [Child] out of harm's way present or in the future. She has not even been able to progress to unsupervised visitation because of these issues.

Dr. Bliss has consistently reported that Mother has done well in all of her interactional evaluations. There have been no concerns during Mother's visits when she has attended. It has been reported that Mother can attend to [Child's] basic needs during visits and interactional evaluations. In her final evaluation of Mother, Dr. Bliss opined that if "it wasn't for the other dangerous or unhealthy people potentially being involved in her life in the past, now and future, [Mother] otherwise could safely and appropriately parent" [Child]. This court finds this observation to be true and also what makes this case particularly sad. There is a bond between Mother and [Child] and their relationship is a positive one. Dr. Bliss has opined in the majority of her reports that Mother and [Child] share a positive bond. Unfortunately for Mother, Dr. Bliss reports that the bond is not a necessary one. To support her conclusion, Dr. Bliss noted that [Child] had gone a significant period of time without seeing Mother without any traumatic effect.[3] It was her ultimate conclusion that if the relationship between Mother and [Child] were severed, there would not be a traumatic effect to the child.

[3] [CYF] offices were shut down from March until July due to Covid-19 restrictions. Mother was offered virtual visits with the child but declined because of connectivity issues.

[Child] has been in his current foster home since June of 2019. [Child] recognizes his foster parents as his psychological parents and his primary bond and attachment is with them. [CYF] Casework Supervisor, David Sprague,

> testified that caseworkers have observed [Child] in his foster home and reported that the child appears bonded to everyone in his foster family. Dr. Bliss conducted two interactional evaluations of the foster family with [Child]. She opined that [Child] appeared attached and bonded to all three of his foster family members, especially foster mother. Dr. Bliss concluded that permanency with the foster family would best suit [Child's] needs and welfare. Additionally, Dr. Bliss reported that due to [Child's] young age and the fact that he spent the majority of his life placed with this foster family, that adoption would best suit his needs and welfare. This court concurs with that conclusion.
>
> While Mother has recently gained insight into her proclivity to engage in relationships with men who are both physically and emotional[ly] abusive, she has not done the internal work to end the cycle of placing herself and her children in unsafe situations. [Child] is in a foster home that provides him with safety and stability.

(Orphans' Court Opinion at 8-10).

The record supports the court's decision to terminate Mother's parental rights under Section 2511(b). While Child shares a bond with Mother, he also is strongly bonded with his foster family, whom he relies upon to fulfill his physical, developmental, and emotional needs. Child is particularly bonded to his foster mother. Additionally, despite Child's positive bond with Mother, Dr. Bliss made it clear that Mother was likely to engage in the same cycle of violent relationships and did not fully appear to understand the impact domestic violence has had upon her children. The court concluded that as a result, Mother did not possess the insight needed to keep Child safe and would likely not gain that insight in a reasonable time period. Thus, termination would further Child's best interests by allowing him to gain stability through adoption

- 12 -

by his foster family.  ***See In re C.D.R., supra***; ***In re N.A.M., supra***.  As the record supports the court's conclusions under Sections 2511(a) and (b), we see no reason to disturb its decision to terminate Mother's parental rights. ***See In re Z.P., supra***.  Accordingly, we affirm.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/2021