J-A11020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Q.C.-W.M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.T.M., FATHER | : | No. 126 WDA 2021 |

Appeal from the Decree Entered January 4, 2021
In the Court of Common Pleas of Cambria County
Orphans' Court at No(s): 2020-628 IVT

BEFORE: McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.:                    **FILED:  June 15, 2021**

Appellant, C.T.M. ("Father"), appeals from the decree entered in the Cambria County Court of Common Pleas, Orphans' Court Division, granting the petition of Appellee, S.K.B. ("Mother"), for involuntary termination of Father's parental rights to his minor child, Q.C.-W.M. ("Child").  We affirm.

The relevant facts and procedural history of this case are as follows.  In 2011, Father pled guilty to statutory sexual assault and unlawful contact with a minor.[1]  Upon his release from prison, Father and Mother commenced a romantic relationship in 2013.  Child was born in 2014.  For the first year of Child's life, Father and Mother lived together.  Shortly after Child's first birthday, however, Father was arrested for driving under the influence of

_____

[1] Due to these convictions, Father is a registered sex offender.  (**See** N.T. Hearing, 12/7/20, at 47).

alcohol ("DUI"). Father has not seen Child since this arrest. In 2016, Father pled guilty to one count of DUI. Father has remained incarcerated due to the DUI offense, as well as technical parole violations for his prior convictions.[2]

On August 21, 2020, Mother filed a petition for involuntary termination of Father's parental rights. That same day, Mother's husband ("Stepfather") filed a petition for adoption. The court conducted a termination hearing on December 7, 2020. At the hearing, the court received testimony from Father, Mother, and Stepfather. On January 4, 2021, the court entered a final decree involuntarily terminating Father's parental rights. The court determined that Father "has performed no duties as a parent toward the child…." (Decree, filed 1/4/21, at ¶10). Regarding Stepfather's petition for adoption, the court declared that adoption proceedings "may continue without further notice to or consent of" Father. (*Id.* at ¶16). On January 25, 2021, Father timely filed a notice of appeal and concise statement of errors complained of on appeal.

Father now raises two issues for our review:

> Whether the trial court erred as a matter of law and/or manifestly abused its discretion in determining [Mother] sustained [her] burden of proving the termination of [Father's] parental rights is warranted under Sections 2511(a)(1) and 2511(a)(2) of the Adoption Act?
>
> Even if this Court concludes [Mother] established statutory grounds for the termination of Father's parental rights, whether the trial court nevertheless erred as a matter of law

---

[2] At the time of the termination hearing, Father was housed at SCI-Greene. (*See* N.T. Hearing at 47). Father also testified that he was scheduled for release as early as February 2021. (*Id.*)

and/or manifestly abused its discretion in determining [Mother] sustained [her] additional burden of proving the termination of Father's parental rights is in the best interests of the child?

(Father's Brief at 8).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable

the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

Mother filed a petition for the involuntary termination of Father's parental rights on the following grounds:

### § 2511.  Grounds for involuntary termination

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*     \*     \*

**(b)   Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by

- 4 -

the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.[3]

On appeal, Father insists "[t]he mere fact that [he] has been and is incarcerated for much of the child's life cannot be the basis for termination of his parental rights." (Father's Brief at 17). Father contends he will be released in 2021, and he "has participated in various treatment programs as well as a parenting group and support groups." (*Id.*) Father also emphasizes his testimony from the termination hearing, including his claims that he contacted his parents ("Paternal Grandparents") to request visitation and maintain contact with Child.[4] Based upon the foregoing, Father argues the court "failed to measure the performance [of parental duties] in light of what would be

_____

[3] Mother also sought the involuntary termination of Father's parental rights under Section 2511(a)(2), but we need only analyze Section 2511(a)(1) for purposes of this appeal.

[4] At the termination hearing, Mother presented the 2018 consent order governing custody. (*See* N.T. Hearing at 12; Mother's Exhibit 3). Pursuant to the order, Mother has primary physical custody, and Paternal Grandparents have partial physical custody for two (2) weekends each month and certain holidays. Father is permitted to "have periods of partial physical custody of the child at times and dates as mutually agreed between all parties." (Mother's Exhibit 3 at 2).

expected of … Father given the circumstances under which … Father finds himself." (*Id.* at 18).

Additionally, Father suggests there is a reasonable probability that he can remedy the causes and conditions that led to his separation from Child. Father maintains he can restore his relationship with Child "upon successful completion of therapy and requirements laid out by the Parole Board." (*Id.*) Moreover, Father avers the record "is devoid of the evidence necessary to document the effect terminating Father's parental rights will have on the child." (*Id.* at 27). Father concludes the court abused its discretion in terminating his parental rights. We disagree.

"A court may terminate parental rights under subsection 2511(a)(1) when the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least six months prior to the filing of the termination petition." *In re I.J., supra* at 10.

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory

provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

With respect to an incarcerated parent, this Court has stated:

[I]ncarceration alone does not provide sufficient grounds for the termination of parental rights. Likewise, a parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize given resources and [fails] to take affirmative steps to support a parent-child relationship. As such, a parent's responsibilities are not tolled during incarceration. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re Adoption of K.J., supra* at 1133 (internal citations and quotation marks omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520

(Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* (internal citations omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121.

Instantly, the testimony from the termination hearing established Father's inability to complete necessary steps to restore his relationship with Child. Specifically, Mother testified that Father "was only an active part of [Child's] life only up until a couple months until [Child] was one, then [Father] was incarcerated." (N.T. Hearing at 10). Although Father was placed on parole on two (2) occasions, he was recommitted to prison after committing technical violations. (*See id.* at 10, 54).

During his periods of imprisonment and parole, Father has not contacted Mother to exercise custodial time. (*Id.* at 14). Mother testified that Father sent one letter to Child in 2016. (*Id.* at 18). Father also sent one e-mail to Mother in the summer of 2020, inquiring about how Child "was doing during COVID." (*Id.* at 19). By comparison, Father has sent "multiple" letters to Mother attempting to rekindle their romantic relationship. (*Id.* at 18). Father's letters to Mother did not mention Child. (*Id.* at 19-20). Mother also

- 8 -

testified that Father has not sent birthday cards or gifts to Child. (*Id.* at 19, 22).

Regarding Father's bond with Child, Mother explained that Child does not know Father.[5] (*Id.* at 23). Rather, Child calls Stepfather "Dad," and Stepfather performs parental duties for Child. (*Id.* at 25). Mother opined that termination of parental rights "will give [Child] the best life he deserves," because Stepfather is the "father figure who has supported [Child]." (*Id.* at 28).

Father disputed many of Mother's assertions regarding his attempts to contact Child. Rather than going through Mother, Father testified that he reached out to Paternal Grandparents "maybe two or three" times to contact Child. (*Id.* at 50-51). Father did not try to schedule visits with Child, because Paternal Grandparents advised him "that they did not want to expose [Child] to the prison environment…." (*Id.* at 50). Aside from his family, Father claimed he wrote to Child's pediatrician and school to obtain updates on Child's well-being. (*Id.* at 51). Father also testified that he purchased gifts for Child, and he instructed his family to purchase gifts on his behalf. (*Id.* at 57).

Nevertheless, Father confirmed that he has not seen Child since August 2015, and Child does not even know that Father exists. (*Id.* at 49, 58). When

_____

[5] Prior to the presentation of witnesses, the court asked for comments from Child's counsel. (*See* N.T. Hearing at 4-5). At that time, Child's counsel indicated that he had spoken with Child and determined that Child did not have a bond with Father. (*Id.* at 5).

asked about the possibility of visiting Child, Father admitted he "did not push for visitation mainly because my supervision as far as probation and parole for the time being prohibits contact with minors." (*Id.* at 53). Father explained that "condition number seven" of his parole requirements prohibits "contact with anyone under the age of 18, and until [the parole board sees] a certain level of progress in street level therapy, for lack of a better word, they do not want me around any children, including my own." (*Id.* at 55). On cross-examination, Father admitted that he has been unable to complete the required sex offenders' therapy during his two periods of parole, and he "was discharged from therapy because of a pornography addiction." (*Id.* at 59).

On this record, the court correctly determined that Father has failed to perform parental duties for at least six months prior to the filing of the termination petition. *See In re I.J., supra*. Father has not seen Child since August 2015. The court observed that Father's "repeated conduct … prevents a relationship" with Child. (Decree at ¶7). Although Father might be able to complete his required sex offenders' therapy at some point in the future, we reiterate that parental rights are not preserved by waiting for a more suitable time to perform one's parental responsibilities. *See Adoption of K.J., supra*. The record also supports the court's conclusions regarding Section 2511(b). Father admitted that Child does not know him, and Mother testified that Stepfather attends to Child's needs. As the court noted, Child "is bonded with his stepfather who performs all of the parental duties needed by the child."

(Decree at ¶9).

Here, terminating Father's parental rights would not destroy an existing, necessary, and beneficial relationship for Child. **See *In re Z.P., supra***. Based upon the foregoing, the record supports the court's conclusion regarding termination of Father's parental rights under Sections 2511(a)(1) and (b). ***Id.*** Consequently, we affirm the decree terminating Father's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2021