J-S13019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: W.E.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.E.B., MOTHER | : | No. 35 MDA 2022 |

Appeal from the Decree Entered December 9, 2021
In the Court of Common Pleas of York County
Orphans' Court at No(s):  2021-0205a

BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                          **FILED JULY 28, 2022**

Appellant, R.E.B. ("Mother"), appeals from the decree entered in the York County Court of Common Pleas, which granted the petition of York County Office of Children and Youth and Families ("CYF") for the involuntary termination of Mother's parental rights to her minor child, W.E.B. ("Child"). We affirm.

The relevant facts and procedural history of this case are as follows. Child was born in December 2019.  CYF initially became involved with Child on December 20, 2019, upon receiving a general protective services ("GPS") referral alleging substance abuse by Mother and domestic violence between Mother and Father.  CYF provided services for four months and the case was

_____

[*] Former Justice specially assigned to the Superior Court.

closed on April 16, 2020. CYF received another GPS referral on April 20, 2020, when the West Manchester Police Department responded to the home due to allegations that Mother was caring for Child while impaired. Upon entering the home, the police officers observed that Mother was unsteady on her feet as she held Child. Police administered a blood alcohol test which showed that Mother's blood alcohol content was 0.13. Mother was ultimately convicted of endangering the welfare of a child regarding this incident and is currently serving probation for this conviction. Child's father indicated that he is unwilling to be a resource for Child and does not wish to pursue reunification.

Child was adjudicated dependent on July 6, 2020 and placed in kinship care with Barbara Wolf ("Maternal Grandmother") and her paramour, Frank DeSalvo. After Child's adjudication, Mother was permitted supervised visitation with Child and provided with drug, alcohol, mental health and parenting education services. Following periodic permanency review hearings, the court noted that Mother was moderately complying with the permanency plan but there was a continued need for placement of Child outside of Mother's care due to insufficient progress toward alleviating the circumstances which necessitated the original placement. On February 25, 2021, Mother underwent a parenting capacity evaluation which concluded that Mother's ability to effectively parent Child is hampered by her use of pain medication, mental health struggles, and lack of adaptive coping strategies, which often leads to unhealthy personal decisions. On August 20, 2021,

Mother attempted to commit suicide by overdosing on her pain medication and was admitted to WellSpan Crisis Intervention under a 72-hour hold.

On September 24, 2021, CYF filed a petition for involuntary termination of Mother's parental rights to Child. The court conducted a termination hearing on December 9, 2021. Kelly Stormes-Smith, a York County probation and parole officer, testified that Mother is currently on probation for the above-mentioned conviction. Officer Stormes-Smith reported that Mother is largely compliant with the terms of her supervision other than failing to mail in reporting forms. Mother is required to complete a drug and alcohol evaluation by February 7, 2023.

Daniel Haverstock, an outpatient therapist at Pennsylvania Counseling Services, testified that Mother was recommended for treatment after she completed a drug and alcohol evaluation on June 22, 2020. Mother completed drug and alcohol treatment on July 19, 2021. Mother was also provided with mental health services. On October 6, 2021, Mother was discharged because Mother needed a higher level of mental health care. Mr. Haverstock reported that while Mother was provided services, she was regularly present and engaged in treatment.

Ashlynn McConnell, a case manager at Pennsylvania Counseling Services, testified that she has been meeting with Mother on a weekly basis since August of 2020 to assist Mother with non-treatment goals. Specifically, she works with Mother to meet goals in engaging with physical and mental

health providers and financial planning, and Mother has been cooperative in this process.

Jessica Weymer, who works at Pressley Ridge, testified that she has been supervising Mother's visitation with Child since April 2021. Mother's visitation occurs two times per week and Mother is consistent and prepared in attending her visits. Mother comes to visits with toys and snacks, and actively engages with Child. However, Ms. Weymer noted one instance where Mother appeared lethargic and put her head down.

Brandon Ambrose, a caseworker with CYF, testified that the top issues identified for Mother to address were mental health stability, drug and alcohol treatment, and housing. Mr. Ambrose indicated that these issues have remained consistent since Child was adjudicated dependent. Specifically, Mother was hospitalized in August 2021 for mental health treatment. Mr. Ambrose last examined Mother's residence in February 2021, and he observed safety issues. He has not since returned to assess whether Mother has remedied these issues. Mr. Ambrose reported that although Mother has been consistent in her visits, she has not progressed to unsupervised or partially supervised visits. Mother takes numerous prescription medications for pain management and there were concerns at the start of the case that Mother was supplementing her medication with alcohol. Since then, Mother has submitted to drug and alcohol testing, and she has not tested positive for any substances other than her prescribed medication. However, Mr. Ambrose

expressed continued concern over Mother's lethargy and tendency to sleep through the day. As a result, Mr. Ambrose does not believe Mother is in a position to provide for the care and safety of Child.

Mr. Ambrose regularly visits with Child at his kinship placement and confirmed that Child is in a safe, loving home where all his needs are met. Additionally, Child is happy, content and particularly bonded with Mr. Desalvo. Mr. Ambrose opined that there would be no long-term negative impacts on Child if Mother's parental rights were terminated. Child seems to have a stronger parental bond with Maternal Grandmother and Mr. DeSalvo than he does to Mother. Additionally, Maternal Grandmother and Mr. DeSalvo have indicated that if Mother's parental rights were terminated, they would continue to allow Mother contact with Child, so long as she is emotionally and mentally stable.

After considering all the evidence presented, the court entered a decree terminating Mother's parental rights on December 9, 2021. Mother timely filed a notice of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement on December 29, 2021.

Mother raises the following issues for our review:

> Whether the [Orphans' Court] abused its discretion in finding that [CYF] had proved by clear and convincing evidence that the parental rights of [Mother] should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(5).
>
> Whether the [Orphans' Court] abused its discretion in finding that [CYF] had proved by clear and convincing evidence that the parental rights of [Mother] should be terminated

pursuant to 23 Pa.C.S.A. § 2511(b).

(Mother's Brief at 4).

In her issues combined, Mother argues the record does not show that she was unwilling or incapable of remedying the conditions that led to Child's removal. Mother asserts that since Child was adjudicated dependent, she has successfully completed drug and alcohol treatment and has not tested positive for a non-prescribed substance. Mother contends she has been compliant with CYF plans, prepared and present during her visits with Child, and is actively treating her mental health issues. Additionally, Mother submits that Child's stronger bond with Maternal Grandmother and Mr. DeSalvo is merely a result of Child spending more time with them. Mother concludes that CYF failed to present clear and convincing evidence that Mother is incapable of caring for Child and that termination is in Child's best interests, and this Court should reverse the decree involuntarily terminating Mother's parental rights. We disagree.

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYF filed a petition for the involuntary termination of Mother's parental rights to Child on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*    \*    \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*    \*    \*

**(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

\*    \*    \*

23 Pa.C.S.A. § 2511(a)(5) and (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra*

at 1117. When conducting a termination analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of…[her] parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Instantly, Child has been removed from Mother's care since July 6, 2020 due to Mother's inability to provide proper care for Child. Notably, since Child has been adjudicated dependent, Mother has not progressed to unsupervised visitation with Child. Although Mother has been cooperative with CYF and engaged in drug and alcohol and mental health treatment, Mother has not demonstrated sufficient progress such that she is presently capable of caring for Child. Specifically, the court expressed concern that Mother is lethargic and sleeping through the day due to her pain medication. Additionally, at the time of the termination hearing, Mother's mental health issues were still of concern as Mother attempted to commit suicide in August of 2021. On this record, the court concluded that notwithstanding Mother's efforts, the conditions which led to Child's removal still existed and Mother was unable to remedy those issues. *See* 23 Pa.C.S.A. § 2511(a)(5). *See also In re Adoption of R.J.S.*, 901 A.2d 502 (Pa.Super. 2006) (holding that court should not subordinate child's need for permanence and stability to parent's

claim of progress and hope for future). Thus, the record supports the court's decision to terminate Mother's parental rights to Child under Section 2511(a)(5). *See In re Z.P., supra*.

Additionally, the record supports the court's decision to terminate Mother's parental rights under Section 2511(b). Child is bonded with Maternal Grandmother and Mr. DeSalvo and relies on them to fulfill his physical, developmental, and emotional needs. Child has a particularly close relationship with Mr. DeSalvo. Maternal Grandmother and Mr. DeSalvo have provided a loving, stable home for Child. Mr. Ambrose testified that although Child also has a bond with Mother, Mother is presently unable to provide stable care for Child. *See In re Adoption of C.D.R.*, 111 A.3d 1212 (Pa.Super. 2015) (affirming termination decision where court acknowledged that Mother and Child were bonded, but reasoned that termination would not be detrimental to Child and would serve Child's best interest and allow Child to find permanency with another family); *In re N.A.M.*, 33 A.3d 95 (Pa.Super. 2011) (explaining mere existence of emotional bond does not preclude termination of parental rights). As the record supports the court's conclusions under Section 2511(a)(5) and (b), we see no reason to disturb its decision to terminate Mother's parental rights. *See In re Z.P., supra*. Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date:07/28/2022